UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

|  |  |  |
|---|---|---|
| CHARMAINE FRASER, | x : : | |
| Plaintiff, | : : | |
| - against - | : : | |
| MTA LONG ISLAND RAIL ROAD, | : : | 12 Civ. 5778 (SLT)(CLP) |
| Defendant. | : x | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**RICHARD L. GANS, ESQ.**
**Vice President/General Counsel & Secretary**
**Attorney for Defendant**
**Law Department - 1143**
**Jamaica Station**
**Jamaica, NY 11435**
**(718) 558-6820**

**KEVIN P. McCAFFREY**
**(Of Counsel)**

## *TABLE OF CONTENTS*

*Pages*

***TABLE OF AUTHORITIES*** ................................................................ *iii*

***PRELIMINARY STATEMENT*** ........................................................... *1*

***STATEMENT OF FACTS*** ................................................................. *1*

***STANDARD OF REVIEW*** ................................................................ *8*

*POINT I*
PLAINTIFF'S EQUAL PAY ACT CLAIM FAILS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*POINT II*
PLAINTIFF'S CLAIMS WITH RESPECT TO THE TRANSFER OF RESPONSIBILITY FOR
ASM ASSIGNMENTS TO THE CREW DISPATCHER'S OFFICE IS TIME BARRED . . . . *11*

*POINT III*
PLAINTIFF HAS FAILED TO ESTABLISH GENDER DISCRIMINATION . . . . . . . . . . . . . *12*

*1. Plaintiff Has Failed to Establish a Prima Facie Case of Gender Discrimination . . . . . . . . . 13*

  *a. Plaintiff has failed to establish an Adverse Employment Action with respect
     to some of her claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13*

  *i. Control of the ASM Board. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13*

  *ii. Exclusion From Meetings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14*

  *iii. Approval of Compensatory Time and Executing Plaintiff's
      Name to Discipline Trial Notices. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14*

  *iv. Inability to Choose Assistant. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15*

  *b. Circumstances do not give raise to inference of discrimination. . . . . . . . . . . . . . . . . 15*

  *i. Control of the ASM Board. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15*

  *ii. Exclusion From Meetings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16*

  *iii. Approval of Compensatory Time and Executing Plaintiff's Name
      to Discipline Trial Notices. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16*

  *iv. Inability to Choose Assistant. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17*

     *v. Reassignment to Manager of Hours of Service* . . . . . . . . . . . . . . . . . . . . . . . . *17*

2. *Legitimate, Non-discriminatory Reasons.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .*18*

3. *Plaintiff Cannot Establish Pretex* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*POINT IV*
PLAINTIFF FAILS TO ESTABLISH A HOSTILE WORK ENVIRONMENT CLAIM . . . . . *22*

*POINT V*
PLAINTIFF FAILS TO ESTABLISH A PRIMA FACIE CASE OF RETALIATION. . . . . . .*25*

1. *Adverse Employment Action.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .*27*

2. *Legitimate Non-retaliatory Reasons.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .*28*

     *i. Control of the ASM Board.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .*28*

     *ii. Reassignment to Manager of Hours of Service.* . . . . . . . . . . . . . . . . . . . . . . . . 28

     *iii. Reassignment of Cubicle.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

     *iv. Denial of Promotion.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

3. *Plaintiff Cannot Establish Pretext.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

***CONCLUSION*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *31*

# *TABLE OF AUTHORITIES*

## *Cases:*

*Adeniji v. Admin. for Children Servs.,NYC,*
    *43 F.Supp. 2d 407 (S.D.N.Y. 1999)*.............................................*18*

*Aldrich v. Randolph Cent. School Dist.,*
    *963 F.2d 520 (2d Cit. 1992)*.................................................*9, 10*

*Alexander v. Westbury Union Free Sch. Dist.,*
    *829 F. Supp. 2d 89 (E.D.N.Y. 2001)*......................................*28*

*Alfano v. Costello,*
    *294 F.3d 365 (2d Cir. 2002)*.................................................*23*

*Amore v. Novarro,*
    *624 F.3d 522 (2d Cir. 2010)*...................................................*8*

*AMTRAK v. Morgan,*
    *536 U.S. 101 (2002)*..............................................................*11*

*Anderson v. Liberty Lobby, Inc.,*
    *477 U.S. 242 (1986)*.............................................................*8,9*

*Asare v. Pegasus Airwave,*
    *1998 U.S. Dist. LEXIS 7607 (N.D. Ill. 1998)*.......................*19*

*Awolesi v. Shinseki,*
    *96 Empl. Prac. Dec. (CCH) P44 (W.D.N.Y. 2013)*.................*30*

*Bernard v. JP Morgan Chase Bank NA,*
    *408 Fed.Appx. 465 (2d Cir. 2011)*........................................*16*

*Beyer v. The Cnty. of Nassau,*
    *524 F.3d 160 (2d Cir. 2008)*.................................................*13*

*Brown v. Time, Inc.,*
    *No., 1997 U.S. Dist. LEXIS 6227 (S.D.N.Y. May 5, 1997)*.............*16*

*Burlington N. & Santa Fe Ry. Co. v. White,*
    548 U.S. 53 (2006)............................................................................27

*Byrne v. Telesector Res. Group, Inc.,*
    339 Fed. Appx. 13 (2d Cir. 2009)..................................................28

*Byrnie v. Bd. of Educ.,*
    243 F.3d 93 (2d Cir. 2001).............................................................21

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986).........................................................................8

*Clark County Sch. Dist. v. Breeden,*
    532 U.S. 268 (2001)...........................................................28, 29, 30

*Colquitt v. Xerox Corp.,*
    2010 U.S. Dist. LEXIS 107355 (W.D.N.Y. Oct. 7, 2010)...............23

*Concey v. N.Y.S. Unified Court Sys.,*
    2011 U.S. Dist. LEXIS 113620, (S.D.N.Y. Sept. 30, 2011)............23

*Corning Glass Works v. Brennan,*
    417 U.S. 188 (1974)..........................................................................9

*Davies v. N.Y. City Dep't of Educ.,*
    2014 U.S. App. LEXIS 7759 (2d Cir. 2014)...................................31

*Dea v. Look,*
    810 F.2d 12 (1st Cir. 1987).............................................................21

*Del. State College v. Ricks,*
    449 U.S. 250 (1980).......................................................................11

*Dent v. U.S. Tennis Ass'n.,*
    2011 U.S. Dist. LEXIS 8341 (E.D.N.Y. Jan. 27, 2011)..................13

*De Oliveira v. Cairo-Durham Cent. Sch. Dist.,*
    2014 U.S. Dist. LEXIS 137593 (N.D.N.Y. 2014)...........................30

*Dister v. Cont'l Group, Inc.,*
    859 F.2d 1108 (2d Cir. 1988)......................................................................8,21

*Doe v. City of New York,*
    473 F. Appx 24 (2d Cir. 2012)....................................................................13

*Duch v. Jakubek,*
    588 F.3d 757 (2d Cir. 2009).......................................................................22

*Dudley v. New York City Hous. Auth.,*
    2014 U.S. Dist. LEXIS 140052 (S.D.N.Y. 2014)..........................................29

*Elmenayer v. ABF Freight Sys., Inc.,*
    318 F.3d 130 (2d Cir. 2003).......................................................................11

*Faragher v. City of Boca Raton,*
    524 U.S. 775 (1998)..................................................................................23

*Galabya v. N.Y. City Bd.Of Educ.,*
    202 F.3d 636 (2d Cir. 2000)........................................................13,14,27,28

*Goenaga v. March of Dimes Birth Defects Found,,*
    51 F.3d 14 (2d Cir. 1995)...........................................................................8

*Gordon v. New York City Bd. of Educ.,*
    232 F3d 111 (2d Cir. 2000)........................................................................27

*Graham v. Long Island R.R.,*
    230 F.3d 34 (2d Cir. 2000).........................................................................17

*Guerrero v. Lowe's Home Centers, Inc.,*
    462 F. Supp. 2d 399 (W.D.N.Y. 2006).......................................................20

*Hampton v. Diageo N. Am., Inc.,*
    2008 U.S. Dist. LEXIS 8965 (D. Conn. 2008).............................................14

*Harris v. Forklift Sys., Inc.,*
    510 U.S. 17 (1993)...................................................................................23

*Hayle v. Nassau Health Care Corp.,*
  2013 U.S. Dist. LEXIS 169791 (E.D.N.Y. 2013)...........................................14

*Holcomb v. Iona Coll.,*
  521 F.3d 130 (2d Cir. 2008)...................................................26

*Holtz v. Rockefeller & Co.,*
  258 F.3d 62 (2d Cir. 2001)...................................................23,26

*Hyek v. Field Support Servs.,*
  702 F. Supp. 2d 84 (E.D.N.Y. 2010).........................................12

*Ioele v. Alden Press, Inc.,*
  145 A.D.2d 29 (1ˢᵗ Dept. 1989)...............................................21

*Islamic Soc'y of Fire Dep't Pers. v. City of New York,*
  205 F. Supp. 2d 75 (E.D.N.Y. 2012)..........................................15

*James v. New York Racing Association,*
  233 F.3d 149 (2d Cir. 2000)...................................................20

*Jimoh v. Ernst & Young,*
  908 F. Supp. 220 (S.D.N.Y. 1995).............................................21

*Jordan v. Kohl's Department Stores, Inc.,*
  2011 U.S. Dist. LEXIS 53016 (MD Tenn May 17, 2011).........................20

*Jute v. Hamilton Sundstrand Corp.,*
  420 F.3d 166 (2d Cir. 2005)...................................................25

*Kaytor v. Elec. Boat Corp.,*
  609 F.3d 537 (2d Cir. 2010)...................................................26

*Kelly v. Howard I Shapiro & Associates Consulting Engineers, P.C.,*
  716 F.3d 10 (2d Cir. 2013)...................................................26

*Kerzer v. Kingly Mfg.,*
  156 F.3d 396 (2d Cir. 1998)...................................................8

*Lawrence v. Thomson Learning, Inc.,*
  2007 U.S. Dist. LEXIS 39988 (N.D.N.Y. 2007)...........................................21

*Lewis v. N.Y.C. Transit Auth.,*
  2014 U.S. Dist. LEXIS 46471 (E.D.N.Y. 2014)...........................................27

*Mabry v. Neighborhood Defender Serv.,*
  769 F Supp. 2d 381 (S.D.N.Y. 2011)...........................................................14

*MacDonnell v. Liberty Central School Dist.,*
  115 Fed. Appx. 489 (2d Cir. 2004)..............................................................11

*Markel v. Bd. of Regents of the Univ. of Wis. Sys.,*
  276 F.3d 906 (7th Cir. 2002).......................................................................15

*Martinez v. Niagara Frontier Transp. Auth.,*
  2001 U.S. Dist. LEXIS 24442 (W.D.N.Y. 2011).........................................10

*Maxwell v. City of Tucson,*
  803 F.2d 444 (9th Cir. 1986).......................................................................10

*McDonnell Douglas Corp. v. Green,*
  411 U.S. 792 (1973)..........................................................................12,25,26

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,*
  715 F.3d 102 (2d Cir. 2013).........................................................................26

*Mills v. S. Conn. State Univ.,*
  519 Fed. Appx. 73 (2d Cir. May 21, 2013)..............................................12,13

*Murray v. Visiting Nurse Servs. of N.Y.,*
  528 F. Supp. 2d 257 (S.D.N.Y. 2007)..........................................................30

*Nat'l R.R. Passenger Corp. v. Morgan,*
  536 U.S. 101 (2002).....................................................................................24

*Naugler v. Air Line Pilots Ass'n, Int'l,*
  193 L.R.R.M. 3337 (E.D.N.Y. 2012)............................................................17

*Oncale v. Sundowner Offshore Services, Inc.,*
    523 U.S. 75, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998)..........................22,23

*Parra v. Four Seasons Hotel,*
    605 F. Supp. 2d 314 (D. Mass. 2009)..........................................16

*Patane v. Clark,*
    508 F.3d 106 (2d Cir. 2007)..............................................22,23

*Pearson v. Bd. of Educ.,*
    499 F. Supp. 2d 575 (S.D.N.Y. 2007)........................................11

*Price v. Danka Corp.,*
    2000 U.S. Dist. LEXIS 3078 (N.D.Tx. 2000)..................................10

*Pucino v. Verizon Wireless Comm'cns, Inc.,*
    618 F.3d 112 (2d Cir. 2010)..................................................22

*Reeves v. Sanderson Plumbing Prods., Inc.,*
    530 U.S. 133 (2000)......................................................12,26

*Rexnord Holdings, Inc. v. Bidermann,*
    21 F.3d 522 (2d Cir. 1994)....................................................8

*Richardson v. Comm'n on Human Rights & Opportunities,*
    532 F.3d 114 (2d Cir. 2008)..................................................26

*Rodriguez v. Bd. of Ed.,*
    620 F.2d 362, 366 (2d Cir. 1980)............................................13

*Roe v. City of Waterbury,*
    542 F.3d 31 (2d Cir. 2008)....................................................8

*Rojas v. Florida,*
    285 F.3d 1339 (11th Cir. 2002)..............................................21

*Roncallo v. Sikorsky Aircraft,*
    447 Fed. Appx. 243 (2d Cir. 2011)..........................................29

*Rose v. Goldman, Sachs & Co.*,
    163 F. Supp. 2d 238 (S.D.N.Y. 2001)..............................................................9

*Ruggieri v. Harrington*,
    146 F. Supp. 2d 202 (E.D.N.Y. 2001)..........................................................15

*Schiano v. Quality Payroll Systems, Inc.*,
    445 F.3d 597 (2d Cir. 2006)..........................................................................22

*Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*,
    165 F.3d 1321 (10th Cir. 1999)....................................................................21

*Singh v. N.Y. City Off-Track Betting Corp.*,
    2005 U.S. Dist. LEXIS 11098 (S.D.N.Y. 2005)............................................24

*Slattery v. Swiss Reins. Am. Corp.*,
    248 F.3d 87 (2d Cir. 2001)............................................................................29

*Smith v. Ward Leonard Elec. Co.*,
    2004 U.S. Dist. LEXIS 14151 (S.D.N.Y. 2004)............................................19

*Spinelli v. City of New York*,
    579 F.3d 160 (2d Cir. 2009)............................................................................9

*Shah v. Eclipsys Corp.*,
    2010 U.S. Dist. LEXIS 67700 (E.D.N.Y. 2010)............................................20

*St. Mary's Honor Center v. Hicks*,
    509 U.S. 502 (1993)...............................................................................12,20

*Staff v. Pall Corp.*,
    233 F. Supp. 2d 516 (S.D.N.Y. 2002)...........................................................27

*Stanley v. Univ. of S. Cal.*,
    178 F.3d 1069 (9th Cir. 1999)......................................................................10

*Stouter v. Smithtown Cent. School Dist.*,
    687 F. Supp. 2d 224, 2010 U.S. Dist. LEXIS 12279
    (E.D.N.Y. Feb. 12, 2010)..............................................................................18

*Thomas v. Roach,*
    *165 F.3d 137 (2d Cir. 1999)*...................................................................8

*Tomka v. Seiler Corp.,*
    *66 F.3d 1295 (2d Cir. 1995)*..............................................................9

*Turner v. Eastconn Reg'l Educ. Serv. Ctr.,*
    *2013 U.S. Dist. LEXIS 35920, 2013 WL 1092907*
    *(D. Conn. Mar. 15, 2013)*.................................................................18

*Univ. of Tex. Sw. Med. Ctr. v. Nassar,*
    *133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013)*.....................................25

*Van Zant v. KLM Royal Dutch Airlines,*
    *80 F.3d 708 (2d Cir. 1996)*...........................................................12,30

*Volpe v. Nassau Cnty.,*
    *915 F. Supp. 2d 284 (E.D.N.Y. 2013)*..............................................9

*Weinstock v. Columbia Univ.,*
    *224 F.3d 33 (2d Cir. 2000)*.....................................................12,20,26

*Williams v. N.Y.C. Hous. Autho.,*
    *61 A.D.3d 62, 872 N.Y.S.2d 27 (1st Dep't 2009)*............................22

*Williams v. R.H. Donnelley, Corp.,*
    *368 F.3d 123 (2d Cir. 2004)*...........................................................13

*Woroski v. Nashua Corp.,*
    *31 F.3d 105 (2d Cir. 1994)*.............................................................20

*Yarde v. Good Samaritan Hospital,*
    *360 F. Supp. 2d 552 (S.D.N.Y. 2005)*.............................................20

## ***Statutes***

*Federal Rules of Civil Procedure*
*Rule (56)*.........................................................................................1, 9

*29 United States Code § 206(d)*...........................................................9

*42 United States Code § 2000e-3(a)*.................................................................25

## PRELIMINARY STATEMENT

Defendant, The Long Island Rail Road Company ("LIRR") (s/h/a "Long Island Railroad") by its attorney, Richard L. Gans, Esq, Vice President/General Counsel & Secretary for the Long Island Rail Road Company ("LIRR"), submit this memorandum of law in support of its motion for summary judgment pursuant to Federal Rules of Civil Procedure, Rule 56.

Plaintiff, Charmaine Fraser, commenced the instant action against the LIRR alleging employment discrimination and retaliation in violation of Title VII, the Equal Pay Act, the New York State Human Rights Law, the New York Labor Law and the New York City Administrative Code.

The LIRR now moves for summary judgment pursuant to Rule 56 on the grounds that: (1) plaintiff has failed to establish a claim under the Equal Pay Act and the Labor Law; (2) plaintiff's claims of discrimination and retaliation with respect to the transfer of authority of the scheduling of Assistant Stationmasters is time-barred; (3) plaintiff has failed to establish a gender discrimination; (4) plaintiff has failed to establish a hostile work environment; (5) plaintiff has failed to establish a claim of retaliation; and (6) granting such other and further relief as to this Court seems just and proper.

## STATEMENT OF FACTS

Plaintiff Charmaine Fraser was hired by The Long Island Rail Road Company ("LIRR") in May of 2000 as an Assistant Conductor. Declaration of Kevin McCaffrey, Exhibit A, p. 17.[1] She became an Assistant Station Master ("ASM") in or around October 2001. *Id.*, p. 18. ASMs are union employees represented by the Transportation Communications Union ("TCU"). *Id.*, p. 22. James Burns was the General Station Master ("GSM") when plaintiff became an ASM. *Id.*, p. 23. Burns retired in 2005. *Id.* At the time of his retirement, Burns had an annual salary of $84,406.40. Exhibit D. Burns was replaced by Lachlan Cameron, who is male. *Id.*, p. 26. Mr. Cameron's initial salary as GSM was $81,217.76. Exhibit

---

[1] Exhibits referred to in the declaration of Kevin McCaffrey are designated herein as "Exhibit ___."

E. Following a series of raises,[2] including a merit raise of 3% (Exhibit J), Cameron's salary at the time of his retirement was $95,981.60. Declaration of Kathleen Meilick ("Meilick Dec."), ¶ 24.

Following Cameron's departure in 2008, the GSM position was posted. Exhibit P. The minimum salary for the position was $79,911 with a midpoint of $99,889. *Id.* The midpoint salary "represents 100% of the salary range." Exhibit G, p. 4 of 12. The duties and responsibilities of the General Stationmaster include managing the coordination of all passenger train movement and customer information at Jamaica Station, Pennsylvania Station ("Penn"), Atlantic Terminal and Hunterspoint Avenue; supervise Assistant Station Masters ("ASM") and ushers. Exhibit P; Exhibit JJ, #14. Plaintiff applied for, and was awarded, the position in February 2009. Meilick Dec., ¶¶ 27, 29. At the time plaintiff applied for the position, her base salary as an ASM was $78,927.68. Exhibit Q.

At the time plaintiff was promoted to GSM, James R. Brooks was the Chief Transportation Officer ("CTO"). Declaration of J. Rod Brooks ("Brooks Dec."), ¶ 2. Supervision of the GSM was within the CTO's responsibilities, and Brooks approved plaintiff's promotion to GSM. *Id.*, ¶¶ 4, 7; Exhibit A, p. 43. The Human Resources Department determined plaintiff's salary based on LIRR policy. Meilick Dec., ¶ 30. Pursuant to that policy, "a promotional increase may be up to a maximum of 10%, or 112% of the midpoint salary for the new position, whichever is less. However, if the maximum allowable increase does not represent 88% of the midpoint for the new position, the department head may request an increase to 88% to ensure equity." Exhibit G, p. 5 of 12. Based on a review of the LIRR policy, it was determined that plaintiff's salary as GSM would be $93,000.00, which was more than 93% of the midpoint, almost $9,000 more than Burns's salary at the time of his retirement and almost $12,000 more than Cameron's starting salary, both just three years earlier. Meilick Dec., ¶ 4, 10, 32, 33.

At the time of plaintiff's appointment, the GSM was responsible for assigning and scheduling ASMs, including overtime assignments. Brooks Dec., ¶ 13. While these assignments were supposed to be made based on seniority (Exhibit A, p. 39), there was no system in place to check and verify this. Brooks

---

[2] For a complete description of Mr. Cameron's salary raises please see the Declaration of Kathleen Meilick, paragraphs 4 to 24.

Dec., ¶ 14.  The ASMs were the last craft (non-management represented employees) in the Transportation Department where assignments were not handled by the Crew Management Office. *Id.*, ¶ 16. Accordingly, shortly after plaintiff was appointed GSM, the prospect of transferring the responsibility of ASM assignments to the Crew Management Office was discussed between the CTO and plaintiff.  *Id.*, ¶ 23; Exhibit A, p. 88.  Based on plaintiff's presentation, the CTO decided to delay implementation of the plan.  Brooks Dec., ¶ 24; Exhibit A, p. 90.

On February 11, 2010, the MTA Inspector General ("IG") forwarded to LIRR President Helena Williams an anonymous complaint alleging favoritism by the GSM in overtime assignments to ASMs based on race.  Exhibit T.  Plaintiff was the GSM during the relevant times in the complaint.  Brooks Dec., ¶ 27.  There were no complaints alleging favoritism in assignments by plaintiff's male predecessors. *Id.*, ¶ 28.  This was a serious allegation that was made possible, in part, by the fact that ASM assignments were handled by a single individual – the GSM - without appropriate internal controls. Brooks Dec., ¶ 30. The IG referred to matter to the LIRR for investigation and response.  Exhibit T.   While the LIRR's investigation failed to substantiate the allegations of favoritism, it revealed poor record-keeping of assignments that pre-existed plaintiff's appointment.  Exhibit U.

At this same time, the LIRR was facing extreme financial hardship because of the national recession.  There was an $800 million deficit in the 2010 MTA operating budget. Brooks Dec., ¶ 32.  To compensate for the shortfall, the LIRR was required to impose service reductions and lay-off personnel. *Id.*, ¶ 33. In addition, at about this time the MTA created a committee to examine and develop methods to reduce overtime. *Id.*, ¶ 34.  ASMs were identified by the MTA as having one of the highest overtime intensity rates in the MTA (overtime as a percentage of the base pay).  Brooks Dec., ¶ 35; Exhibit A, p. 93.   The MTA also expressed concern with a single individual having authority over overtime assignments.   Brooks Dec., ¶ 36. Accordingly, in or around February 2010, based on the investigation concerning the anonymous complaint, the budget crisis, the overtime intensity of the ASM assignments, the lack of transparency and accountability in ASM assignments and the need to ensure overtime assignments were not controlled by a single individual, the CTO decided to transfer responsibility of

3

ASM assignments from the GSM to the Crew Management Office. Brooks Dec., ¶ 37.   Plaintiff was unequivocally informed of this determination as early as March 22, 2010. Exhibit S; Exhibit B, pp. 20-21. Plaintiff did not formally complain of discrimination prior to that date. Exhibit B, p. 21.

This was not the first time, nor the last time, that the GSM's responsibilities changed. Exhibit B, p. 43. Customer service was removed from the GSM's responsibilities when Cameron was GSM. *Id.* Moreover, after plaintiff was no longer the GSM, ASMs became subject to SAFER reports (which record employee operational errors) by GSMs and other supervisors who note rule violations. Exhibit A, pp. 102-103, 105-106. The process for issuing rule violations was changed even though the person who later held the responsibilities of GSM was male. Exhibit A, pp. 104-106. Moreover, this was not the first time that the TCU requested a change in the process or procedure for assignments for members. DeCarlo Dec., ¶ 19-28.

The transfer of ASM assignments to the Crew Management Office was a complex process that needed a collaborative effort to implement. Brooks, ¶ 89. However, plaintiff continued to lobby the CTO to reverse his decision and allow her to retain authority to assign ASMs. Exhibit B, pp. 31-34; Brooks Dec., ¶ 43; Exhibit V. This constant lobbying was counterproductive to the transition process. Brooks Dec., ¶ 44.

Plaintiff alleges that she was excluded from three meetings concerning the ASM board transfer, while acknowledging she was invited to four others. Exhibit B, p. 58-61. While plaintiff was not invited to a meeting on April 7, 2011, all the attendees at that meeting were direct reports to Vincent Campasano. *Id.* Plaintiff was not invited because she did not report to Campasano. Exhibit C, pp. 44-45. One of the other meetings plaintiff alleges she was excluded from was an informal meeting between union members (plaintiff was not a union member) to discuss the board transfer. Exhibit B, p. 62-64. Plaintiff does not know who organized the meeting, but believed that it should never have taken place. Exhibit B, p. 62. Plaintiff was inadvertently excluded from a single meeting, and was subsequently advised of its agenda. Exhibit A, p. 147.

4

Plaintiff also alleges that General Superintendent Spiro Papanikolatos overruled her denial of an AMS's request for compensatory time (Exhibit Z, p. 75) and that the LIRR executed her name to trial notices (Exhibit A, p 79). With regard to the denial of compensatory time, Papanikolatos did so at the request of the TCU because the employee had a personal problem that she had to deal with. Ex. Z, p. 81. With regard to the execution of plaintiff's name to trial notices, it was the practice of the transportation trial office to prepare charges and execute the signature of the employee's immediate supervisor, as it has a limited time to serve trial notices on employees advising them of that they are being charged with discipline, and the trial notice must come from the immediate supervisor. Declaration of Scott Petraglia (Pet. Dec.), ¶¶ 5, 6. The trial office executed the names of supervisors without regard to gender. Pet. Dec., ¶ 6.

Responsibility for the assignments of the ASMs was officially transferred to the Crew Management Office on May 6, 2011. Exhibit X. In July 2011, plaintiff was instructed to notify the ASMs that requests for time off on compensation, vacation or personal time must be made through the Crew Management Office. Brooks Dec., ¶ 49. Plaintiff continued to resist and sought to retain authority to approve compensation time for ASMs. Exhibit W. Plaintiff's behavior and reaction towards the transfer of responsibility of assignments of the ASMs to the Crew Management Office was unprofessional and counter-productive, and raised serious concerns about her ability to work in a cooperative fashion to implement the policies of the LIRR. Brooks Dec., ¶ 52, 53; Exhibit C, pp. 131-132

In January 2012, there was an open position for an ASM, a represented position. Meilick Dec., ¶ 38. Pursuant to the LIRR Corporate Policy for Filing Vacancies, the Human Resources Department is responsible for extending conditional offers and confirming job offers to candidates for represented positions. Exhibit Y, p. 1 of 4; Meilick Dec., ¶ 37. However, before the selection process was complete, plaintiff directly contacted a candidate for the position, advised the candidate that he had been awarded the job, and gave him a start date. Meilick Dec., ¶ 39. Plaintiff's contact with the candidate, who in fact was not offered the position, was not approved by Human Resources. Meilick Dec., ¶ 40, 41. Plaintiff's interference was a serious breach of LIRR policies that created confusion and discord. Meilick Dec., ¶ 42.

5

Upon the retirement of her chosen assistant, the position of assistant to the GSM became available. Brooks Dec., ¶ 62.  At the request of the TCU, the assistant job was designated "N1" and made open to the bidding process, with the ASM having the most seniority awarded the job. Brooks Dec., ¶ 63; Exhibit B, 93; DeCarlo Dec., ¶ 36-37.  Plaintiff objected to the designation and demanded that she have sole authority to fill the position.  Exhibit AA. However, since ASM assignments were now transferred to the Crew Management Office, the N1 position was treated like any other represented position and would be awarded based on seniority. Brooks Dec., ¶ 66; Exhibit Z, p. 89.  Zekisha Barrett was awarded the N1 position based on her seniority.  Exhibit AA; Exhibit Z, pp. 91-92.

Shortly thereafter, an investigation revealed that plaintiff verbally abused Barrett for taking direction from Acting Superintendent Joseph Navarro to change her reporting location while the station master's office was being cleaned.  Exhibit CC; Exhibit DD, p. 12.  Barrett's account of plaintiff's conduct was confirmed by Suzanne Clark.  Exhibit EE. Fraser's actions caused Barrett to seek help through the LIRR's Employee Assistance Program and to take sick leave.  Exhibit FF.  Plaintiff's conduct with respect to Barrett was unprofessional and a serious breach of the LIRR core values, and demonstrated that she was unable to effectively manage subordinates. Brooks Dec., ¶ 76, 77; Exhibit B, pp. 109-110.

During her deposition, plaintiff identified three *female* employees who cursed at or otherwise verbally abused other LIRR employees, although she concedes that that none of these women were disciplined.  Exhibit B, pp. 112-115.  The CTO, on the other hand, was unaware of any other instance where a supervisor verbally abused a subordinate like plaintiff did to Barrett. Brooks Dec., ¶ 78.  Moreover, plaintiff's conduct with respect to subordinates generated a complaint from the TCU.  Brooks Dec., ¶ 81; Exhibit HH; DeCarlo Dec., ¶ 42..  This was the first time that Brooks, in his tenure as CTO, received a letter from a union complaining that its members felt threatened by a supervisor.  Brooks Dec., ¶ 83.

Plaintiff's conduct was detrimental to labor-management relations and was becoming a burden on the department. Brooks Dec., ¶ 84.  Based on plaintiff's demonstrated unprofessional conduct, and the

6

fact that her performance, behavior and leadership skills were less than acceptable, it was determined that she needed to be reassigned. Brooks Dec., ¶ 85, 88; Exhibit KK. Accordingly, effective April 24, 2012, plaintiff was transferred from her GSM position to Manager of Hours of Service. Brooks Dec., ¶ 86. Plaintiff retained her $93,000.00 salary. Meilick Dec., ¶ 44.

On or about July 7, 2012, plaintiff applied for a position of Lead Transportation Manager. Meilick Dec., ¶ 45. Pursuant to LIRR Corporate Policy, an employee must be in her current position for one year before being eligible for a promotion and/or reassignment. Meilick Dec., ¶ 46; Exhibit Y, p. 2 of 4. On September 28, 2012, plaintiff was advised that she was ineligible for the position because she was not in her current position for twelve months immediately preceding the posting closing date. Exhibit R The Human Resource representative who made the determination was unaware of any complaints of gender discrimination by plaintiff. Declaration of Tracy Hessel-Andor, ¶ 13.

On or about September 27, 2012, plaintiff applied for the position of Manager of Customer Service and Terminal Operations. Meilick Dec., ¶ 50. She was also ineligible for the position because she was not in her current position for twelve months immediately preceding the posting closing date. Meilick Dec., ¶ 51. The Human Resource representative who made the determination was unaware of any complaints of gender discrimination by plaintiff. Declaration of Mary L. Centauro, ¶ 13.

After her reassignment, plaintiff was assigned to Jamaica Control Center ("JCC"). Exhibit B, p. 139. There were no available offices when plaintiff moved to JCC, as offices there were at a premium and assigned to Lead Transportation Managers and above – positions that are higher than both Manager of Hours of Service and GSM. Exhibit B, p. 146. While plaintiff believes that another employee should have vacated to make room for her, the supervisor did not want to force the employee out because the employee was recently denied a promotion. Exhibit B, p. 143. Moreover, plaintiff's direct supervisor as Manager of Hours of Service was located in Hillside Support Facility ("HSF") and plaintiff was assigned an office in HSF. Exhibit B, p. 139, 149; Exhibit Z, p. 150; Exhibit B, 149. As of November 1, 2014, plaintiff is using her office in HSF. Pet. Dec., ¶ 22.

Plaintiff filed a complaint with the New York State Division of Human Rights ("NYSDHR") on January 27, 2012 alleging employment discrimination. Exhibit II.  While plaintiff now claims that a hostile work environment was created by Christopher Teresky and an allegedly offensive username on a computer game, Plaintiff did not raise a claim of a hostile work environment claim with respect to her allegations concerning Teresky or the allegedly offensive username in that complaint.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008). When evaluating the material facts, the court "construes all evidence in the light most favorable to the non-moving party, drawing all inferences and resolving all ambiguities in [its] favor." *Amore v. Novarro*, 624 F.3d 522, 529 (2d Cir. 2010). Thus, the movant must demonstrate the absence of genuine issues of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999), a burden it can meet "if [it] can point to an absence of evidence to support an essential element of the nonmoving party's claim," *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).

If the movant satisfies its burden, the nonmoving party must offer specific evidence showing that a genuine issue of material fact warrants a trial. *See Celotex*, 477 U.S. at 324. "A 'genuine' dispute over a material fact only arises if the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988) (citation omitted). The bald assertion of some alleged factual dispute will not defeat a properly supported motion. *See Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525 (2d Cir. 1994) (citation omitted). "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998). Naturally, reasonable inferences may defeat a summary judgment motion, but only when they are supported by affirmative facts and relevant,

admissible evidence. *See* Fed. R. Civ. P. 56(c)(4); *Spinelli v. City of New York*, 579 F.3d 160, 166-67 (2d Cir. 2009). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

## POINT I

## PLAINTIFF'S EQUAL PAY ACT CLAIM FAILS

The Equal Pay Act ("EPA") prohibits employers from discriminating between employees on the basis of sex. 29 U.S.C. § 206(d). Under the EPA, [n]o employer ... shall discriminate ... between employees on the basis of sex by paying wages to employees ... at a rate less than the rate at which he pays wages to employees of the opposite sex ... for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.... *Id.* § 206(d)(1). "Claims for violations of the Equal Pay Act and the New York Labor Law may be evaluated under the same standard." *Volpe v. Nassau Cnty.*, 915 F. Supp. 2d 284, 291 n.5 (E.D.N.Y. 2013) (quoting *Rose v. Goldman, Sachs & Co.*, 163 F. Supp. 2d 238, 243 (S.D.N.Y. 2001)).

To prove a violation of the EPA, a plaintiff must first establish a *prima facie* case of discrimination by showing: "i) the employer pays different wages to employees of the opposite sex; ii) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and iii) the jobs are performed under similar working conditions." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1310 (2d Cir. 1995); *accord Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974). Once a plaintiff makes out a *prima facie* case under the EPA, the burden of persuasion shifts to the defendant to show that the wage disparity is justified by one of the affirmative defenses provided under the Act: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1). Following such proof by the employer, the plaintiff may counter the employer's affirmative defense by producing evidence that the reasons the defendant seeks to advance are actually a pretext for sex discrimination. *Aldrich v. Randolph*

9

*Cent. School Dist.*, 963 F.2d 520, 526 (2d Cir. 1992). "'The appropriate inquiry to determine if the factor put forward is a pretext is whether the employer has used the factor reasonably in light of the employer's stated purpose as well as its other practices.'" *Id.* (quoting *Maxwell v. City of Tucson*, 803 F.2d 444, 446 (9th Cir. 1986)).

The discrepancy in plaintiff's starting salary was not related to her gender, but rather to the application of the LIRR's gender neutral salary policy. Plaintiff was awarded the GSM position in February 2009 with a starting salary almost $12,000 more than her male predecessor's starting salary just three years earlier. Meilick Dec., ¶ 4, 10, 32, 33. *Martinez v. Niagara Frontier Transp. Auth.*, 2001 U.S. Dist. LEXIS 24442, *10 (W.D.N.Y. 2011)("The fact that Gajewski had been working at NFTA for three and a half years would be a perfectly permissible explanation other than sex to explain the differences in salary. This Court will therefore only compare plaintiff's starting salary to Gajewski's starting salary when deciding if the difference in salary violates the EPA."). In fact, plaintiff's starting salary was close to her predecessor's ending salary, which came after three years in the position and a 3% merit raise. *Price v. Danka Corp.*, 2000 U.S. Dist. LEXIS 3078, *34-35 (N.D.Tx. 2000)("Assuming, *arguendo*, that Mersinger had established that she was paid less than Ortiz and Rivera for her responsibilities as Market Manager, her claim would fail in any event. Danka asserts that even if there was a differential in the pay that Mersinger received compared to either Ortiz or Rivera, that differential was justified on the basis of the second exception to the statute, i.e., merit. Danka claims that Mersinger was paid the normal salary for a new Market Manager, and that her salary would increase as she gained experience in the position."); *see also Stanley v. Univ. of S. Cal.*, 178 F.3d 1069, 1075 (9th Cir. 1999) (holding that employers "may reward professional experience without violating the EPA").

Plaintiff's starting GSM salary was based on the application of the LIRR's gender neutral Salary Administration Policy That policy provided that "a promotional increase may be up to a maximum of 10%, or 112% of the midpoint salary for the new position, whichever is less. However, if the maximum allowable increase does not represent 88% of the midpoint for the new position, the department head may request an increase to 88% to ensure equity." Ex. G. Since a 10% salary increase (from plaintiff's

$78,927.68 base ASM salary to $86,820.35) would not have provided plaintiff with at least 88% of the salary midpoint for the GSM position, the LIRR decided to pay plaintiff $93,000.00, or approximately 93% of the midpoint. If anything, plaintiff was treated more favorably than she should have been under the LIRR's gender neutral policy.

### POINT II

### PLAINTIFF'S CLAIMS WITH RESPECT TO THE TRANSFER OF RESPONSIBILITY FOR ASM ASSIGNMENTS TO THE CREW DISPATCHER'S OFFICE IS TIME BARRED

A plaintiff seeking to recover under Title VII must file a discrimination charge with the EEOC within 300 days of the occurrence of the allegedly unlawful employment practice. *See* 42 U.S.C. § 2000e-5(e)(1). Each discrete act is "a separate employment practice. . ., even if that action is simply a periodic implementation of an adverse decision previously made." *Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 134 (2d Cir. 2003); *see also AMTRAK v. Morgan*, 536 U.S. 101, 111 (2002) ("There is simply no indication that the term 'practice' [in 42 U.S.C. § 2000e-2] converts related discrete acts into a single, unlawful practice for the purposes of timely filing."). A change in job responsibilities is a discrete discriminatory act. *MacDonnell v. Liberty Central School Dist.*, 115 Fed. Appx. 489, 491 (2d Cir. 2004). A discrete act of discrimination is time-barred if it occurred prior to the applicable limitations period. *Morgan*, 536 U.S. at 113. Moreover, a "discrete unlawful practice takes place" when a plaintiff receives *notice* of the discriminatory conduct, not when a discriminatory decision is implemented or when its effects are felt. *Del. State College v. Ricks*, 449 U.S. 250, 258 (1980) (the "proper focus is upon the time of the *discriminatory acts*, not upon the time at which the consequences of the acts become most painful"); *Pearson v. Bd. of Educ.*, 499 F. Supp.2d 575, 590 (S.D.N.Y. 2007).

Plaintiff was unequivocally informed of the determination to transfer responsibility of ASM assignments to the Crew Management Office on March 22, 2010. Plaintiff filed a complaint with the NYSDHR on January 27, 2012 alleging employment discrimination. As this was more than 300 days from when plaintiff was informed of the LIRR's determination to transfer responsibility of ASM

assignments to the Crew Management Office, plaintiff's retaliation and discrimination claims with respect to the transfer of responsibility of ASM assignments to the Crew Management Office are time barred.

## POINT III

### PLAINTIFF HAS FAILED TO ESTABLISH GENDER DISCRIMINATION

Title VII claims are assessed using the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Mills v. S. Conn. State Univ.*, 519 Fed. Appx. 73 (2d Cir. May 21, 2013) (applying *McDonnell Douglas* framework to gender discrimination claim). Under the framework, a plaintiff must first establish a prima facie case of discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). If Plaintiff satisfies this initial burden, the burden then shifts to Defendant to articulate a legitimate, nondiscriminatory reason for its actions. *Hicks*, 509 U.S. at 506-07. Defendant's burden "is not a particularly steep hurdle." *Hyek v. Field Support Servs.*, 702 F. Supp. 2d 84, 93 (E.D.N.Y. 2010). It "is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (quoting *Hicks*, 509 U.S. at 509). If the employer articulates a nondiscriminatory reason, "the presumption of discrimination arising with the establishment of the prima facie case drops from the picture," and the burden shifts back to plaintiff to show "that defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000). This requires plaintiff to put forward "not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely than not discrimination was the real reason for the discharge." *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir. 1996).

Plaintiff alleges the following incidents of gender discrimination: (1) being stripped of her responsibility over ASM assignments; (2) having her authority to approve or deny compensatory time for ASMs circumvented; (3) being denied the opportunity to pick an assistant; (4) being excluded from meetings; (5) being reassigned from her GSM position to Manager of Hours of Service.

1.      **Plaintiff Has Failed to Establish a Prima Facie Case of Gender Discrimination**

To establish a prima facie case of employment discrimination under Title VII, a plaintiff must show that: (1) she belongs to a protected class; (2) she was qualified for the position in question; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under "circumstances giving rise to an inference of gender discrimination." *Mills*, 519 Fed. Appx. at 75; *see also Doe v. City of New York*, 473 F. Appx 24, 27 (2d Cir. 2012)."Although plaintiff's burden at the prima facie stage is minimal, [s]he must provide some competent evidence that would be sufficient to permit a rational finder of fact to infer a discriminatory motive." *Dent v. U.S. Tennis Ass'n*,, 2011 U.S. Dist. LEXIS 8341, 2011 WL 308417, at *4 (E.D.N.Y. Jan. 27, 2011).

a.      **Plaintiff has failed to establish an Adverse Employment Action with respect to some of her claims.**

The Second Circuit has explained that the acts of an employer which are deemed "sufficiently disadvantageous to constitute an adverse employment action include a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Beyer v. The Cnty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008)   (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004)). Changes in assignments or responsibilities that do not "radical[ly] change" the nature of work are not typically adverse employment actions. *See Galabya v. N. Y. City Bd. Of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000 (quoting *Rodriguez v. Bd. of Ed.*, 620 F.2d 362, 366 (2d Cir. 1980)). Moreover, a plaintiff must set forth *objective proof* that the alleged action was materially adverse. *Beyer*, 524 F.3d at 164. ("[W]e require a plaintiff to proffer objective indicia of material disadvantage; subjective personal disappointment is not enough.") (citations and internal quotation marks omitted).

i.      **Control of the ASM Board**

As shown above, the GSM's responsibilities are many and varied, and include numerous operational and customer service responsibilities. Transferring the responsibility for ASM assignments to

13

the Crew Management Office freed the GSM from an administrative function to concentrate on her operational and customer service responsibilities. Brooks, ¶ 21. As the transfer of responsibility for ASM assignments from the GSM to the Crew Management Office was simply an alteration of job responsibilities, it did not constitute an adverse employment action. *Hayle v. Nassau Health Care Corp.*, 2013 U.S. Dist. LEXIS 169791, *16 (E.D.N.Y. 2013)("plaintiff's allegations that she suffered adverse action because Oliveira took away her scheduling duties and gave those duties to Pane are not sufficient to support a discrimination claim. Plaintiff has failed to offer any evidence that her loss of duties was materially adverse to her employment and not simply an alteration of her duties."); *citing ) Galabya*, 202 F.3d at 640 ("To be 'materially adverse' a change in working conditions must be 'more disruptive than . . . an alteration of job responsibilities.")

### ii. Exclusion From Meetings

Plaintiff alleges that she was excluded from three meetings concerning the ASM board transfer although, as shown above, she was invited to four others, should not have been invited to two of the meetings from which she was excluded, and was inadvertently excluded from only one meeting. Regardless of the number of meetings plaintiff was excluded from, courts have found that exclusion from meetings does not amount to an adverse employment action. See, e.g., *Mabry v. Neighborhood Defender Serv.*, 769 F. Supp. 2d 381, 399 (S.D.N.Y. 2011) ("While plaintiff may be subjectively unhappy with his exclusion from management meetings, the failure to invite plaintiff to management meetings does not rise to the level of a material adverse action."); *Hampton v. Diageo N. Am., Inc.*, 2008 U.S. Dist. LEXIS 8965, *28 (D. Conn. 2008) (finding that "exclusion from meetings" does not "constitute an adverse employment action[ ].") Accordingly, plaintiff's claim of discrimination with respect to being excluded from meetings must be dismissed.

### iii. Approval of Compensatory Time and Executing Plaintiff's Name to Discipline Trial Notices

Plaintiff alleges that the overruling of her denial of an AMS's request for compensatory time and execution of her name to trial notices were adverse employment actions. Plaintiff's allegations do not

amount to adverse employment actions as a matter of law, as she "suffered no loss of wages, benefits, responsibilities, or anything else" by these actions. *Ruggieri v. Harrington*, 146 F. Supp. 2d 202, 216 (E.D.N.Y. 2001); accord *Markel v. Bd. of Regents of the Univ. of Wis. Sys.*, 276 F.3d 906, 911 (7th Cir. 2002) ("Typically, adverse employment actions are economic injuries such as dismissal, suspension, failure to promote, or diminution in pay.").

### iv.    Inability to Choose Assistant

Plaintiff alleges that the selection of the GSM assistant through a seniority based system was an adverse employment action because she was no longer able to pick her assistant outside that system. Plaintiff's premise is incorrect, as she was able to pick an assistant outside the seniority system but that pick would go to the bottom of the roster for overtime selections. Ex. B, p. 93; DeCarol Dec., ¶ 32, 33. Furthermore, even if plaintiff was denied the ability to select her own assistant, the selection of an individual instead of plaintiff's preferred candidate does not in any way effect a "material adverse change" in that position.   See, *Islamic Soc'y of Fire Dep't Pers. v. City of New York*, 205 F. Supp. 2d 75, 84 (E.D.N.Y. 2012)("even assuming *arguendo* that access to a chaplain of one's own faith is a 'term or condition' of employment, the Court fails to see how the decision to hire Dr. Adesanya instead of Plaintiffs' preferred candidate, Imam Abdulmalik, in any way effects a 'material adverse change' in that access.")

### b.    Circumstances do not give raise to inference of discrimination

### i.    Control of the ASM Board

Assuming arguendo that transfer of responsibility for ASM assignments to the Crew Management Office is an adverse employment action, the circumstances under which the change was made do not give raise to an inference of discrimination.   In or around February 2010, based on the investigation concerning the anonymous complaint alleging favoritism by the GSM in overtime assignments to ASMs based on race, the budget crisis, the overtime intensity of the ASM assignments, the lack of transparency and accountability in ASM assignments and the need to ensure overtime assignments are not controlled by a single individual, the CTO decided to transfer responsibility of ASM assignments from the GSM to

the Crew Management Office. Brooks Dec., ¶ 37. This determination was made without regard to plaintiff's gender. Brooks Dec., ¶ 38. Simply because the plaintiff disagrees with the decision does not lead to an inference that the transfer was discriminatory. See *Brown v. Time, Inc.,* No., 1997 U.S. Dist. LEXIS 6227, at *38 (S.D.N.Y. May 5, 1997) ("An employer is permitted to make bad business judgments and misjudge the work of employees as long as its evaluations and decisions are nondiscriminatory.").

ii.    **Exclusion From Meetings**

Assuming arguendo that plaintiff's exclusion from three meetings was an adverse employment action, the alleged exclusions do not give raise to an inference of discrimination.  One of the meetings was an informal meeting between represented employees, and plaintiff was not a represented employee. Another meeting was for direct reports to Vincent Campasano, and plaintiff was not a direct report to Campasano.   Plaintiff was inadvertently excluded from a single meeting.  This inadvertent error does not give rise to an inference of discrimination.  *Parra v. Four Seasons Hotel*, 605 F. Supp. 2d 314, 332 (D. Mass. 2009) ("The fact that the Hotel disciplined the wrong employee on the basis of an error or mistake is not the type of personnel decision that Title VII stands to remedy.")

iii.    **Approval of Compensatory Time and Executing Plaintiff's Name to Discipline Trial Notices**

Assuming arguendo that the determination to overrule plaintiff and grant compensatory time to an employee was an adverse employment action, the decision does not give rise to an inference of discrimination. The General Superintendent, who has done this for other employees, acted at the union's request because the employee had a personal problem that she had to deal with. Ex. Z, p. 81.  Executing plaintiff's name to discipline trial notices also does not give rise to an inference of discrimination, as the trial office did this for both male and female supervisors because it has a limited time to serve trial notices on employees advising them of that they are being charged with and the trial notice must come from the employee's   immediate   supervisor.   Pet.   Dec.,    ¶    5,    6.There   can   therefore   be no inference of discrimination where employees within a protected class are treated the same as other employees. See *Bernard v. JP Morgan Chase Bank NA*, 408 Fed.Appx. 465, 468-69 (2d Cir. 2011).

16

### iv.   Inability to Choose Assistant

Assuming arguendo that plaintiff's inability to pick her own assistant outside the seniority system without restriction was an adverse employment action, it does not give raise to an inference of discrimination.   First, it must be emphasized that the TCU did not object to the GSM appointing an assistant by creating a special duty position; rather the TCU objected to the GSM picking an assistant outside the seniority system set forth in set forth in the May 6, 2011 memorandum and seniority assignment rules. Exhibit B, p. 93; DeC. Dec., ¶ 33.   Complying with a labor agreement does not raise an inference of discrimination.   See *Naugler v. Air Line Pilots Ass'n, Int'l*, 193 L.R.R.M. 3337, *34 (E.D.N.Y. 2012)("Not treating MDA pilots identically to mainline pilots, based on existing agreements setting the terms of employment, does not constitute discrimination.")

### v.   Reassignment to Manager of Hours of Service

There is no evidence that plaintiff's transfer from GSM to Manager of Hours of Service because of plaintiff's gender.   Rather, as shown above, plaintiff was transferred because her performance, behavior and leadership skills were less than acceptable.   As shown above, her behavior and reaction towards the transfer of responsibility of assignments of the ASMs to the Crew Management Office was unprofessional and counter-productive, and her continued resistance to the decision to transfer of responsibility of assignments of the ASMs to the Crew Management Office after being advised that the decision was final raised serious concerns about her ability to work in a cooperative fashion to implement the policies of the LIRR.   Moreover, plaintiff's interaction with subordinates, including verbal abuse verified by an independent witness, generated union complaints alleging that she was creating a hostile work environment.   She also acted contrary to LIRR Corporate Policy, creating confusion and discord, when she contacted a candidate for an ASM position, advised the candidate that he had been awarded the job, and gave him a start date.

There is no evidence that J. Rod Brooks, the official who made the decision to transfer plaintiff, made any statement indicative of gender bias, and plaintiff is unable to raise an inference of discrimination through disparate treatment. Exhibit A, p. 92; see *Graham v. Long Island R.R.*, 230 F.3d

17

34, 39 (2d Cir. 2000)(Under a disparate treatment theory, a plaintiff may raise such an inference of discrimination "by showing that the employer subjected him to disparate treatment [—] that is[,] treated him less favorably than a similarly situated employee outside his protected group.") Plaintiff's errors are unique, as she is the only manager during Brooks's tenure as CTO where the union complained and alleged that a manager was creating a hostile work environment. Brooks Dec., ¶ 78, 83.

Plaintiff cannot show an inference of discrimination relating to her reassignment following her hostile treatment of subordinates, as she alleges only that she was treated differently from other *female* supervisors accused of verbally abusing subordinates. Exhibit B, pp. 112-115. *See Turner v. Eastconn Reg'l Educ. Serv. Ctr.*, No. 12-CV-788, 2013 U.S. Dist. LEXIS 35920, 2013 WL 1092907, at *8-9 (D. Conn. Mar. 15, 2013) (plaintiff's allegation that a member of her same protected class "received favorable treatment would undermine any inference that the [d]efendants were motivated by [discriminatory] animus"); see also *Adeniji v. Admin. for Children Servs., NYC*, 43 F. Supp. 2d 407, 426 n. 7 (S.D.N.Y. 1999) (collecting cases in which plaintiffs failed to establish an inference of discrimination where they were treated less favorably than members of their own protected classes).

Finally, any inference of discrimination with respect to plaintiff's transfer to Manager of Hours of Service is further diminished by the fact that the same person who approved her promotion to GSM – the CTO - is the same person who decided to transfer her due to her unprofessional conduct. Exhibit A, p. 53; Brooks Dec., ¶ 7. Accordingly, plaintiff has failed to establish that her transfer was the product of unlawful discrimination. *See Stouter v. Smithtown Cent. School Dist.*, No. CV 07-2707(ETB), 687 F. Supp. 2d 224, 2010 U.S. Dist. LEXIS 12279, 2010 WL 520628, at *7 (E.D.N.Y. Feb. 12, 2010) ("A plaintiff's being hired and fired by the same manager is a highly relevant factor suggesting that invidious discrimination was unlikely") (internal quotation marks and citations omitted).

**2.    Legitimate, Non-discriminatory Reasons**

Assuming arguendo that plaintiff has established a prima facie case of discrimination, defendant has established legitimate non-discriminatory reasons to take the actions it did.

Responsibility of ASM assignments was transferred to the Crew Management Office because of a complaint concerning assignments made to the MTA IG, the budget crisis, the overtime intensity for ASM assignments, the lack of transparency and accountability in ASM assignments and the need to ensure overtime assignments are not controlled by a single individual. The proffered rationale is more than sufficient to establish a legitimate non-discriminatory justification for the reassignment of responsibility for ASM assignments to the Crew Management Office.

Plaintiff was excluded from the April 7, 2011 meeting with Campasano, as all of the attendees at that meeting were Campasano's direct reports. Plaintiff also had no right to be present at the meeting between represented employees. While plaintiff was inadvertently excluded from a single meeting, "an honest mistake does not establish discriminatory motive." *Asare v. Pegasus Airwave*, 1998 U.S. Dist. LEXIS 7607, *10 (N.D. Ill. 1998). Defendant had legitimate non-discriminatory reasons to exclude plaintiff from these meetings.

Papanikolatos overruled a determination by plaintiff to deny a vacation day for an employee, at the request of the TCU, because the employee had a personal problem that she had to deal with. The employee's personal problem was a legitimate non-discriminatory reason to overrule plaintiff's initial determination to deny a day off. The relevant collective bargaining agreements set a time limit by which trial notice notifications must be made, and the transportation trial office executed trial notices to comply with the time limits. The LIRR had a legitimate non-discriminatory reason to execute plaintiff's signature to trial notices advising employees of discipline.

The TCU insisted that the assignment of the GSM assistant be subject to the May 6, 2011 memorandum and seniority assignment rules or the assigned ASM lose seniority rights for extra assignments. DeCarlo Dec., ¶ 37. The LIRR, by complying with this labor agreement, had a legitimate, non-discriminatory justification for plaintiff's inability to pick her own assistant without limitation or condition. *Smith v. Ward Leonard Elec. Co.*, 2004 U.S. Dist. LEXIS 14151, *16-17 (S.D.N.Y. 2004).

Plaintiff's response to the transfer of responsibility for ASM assignment to the Crew Management Office was counterproductive and unprofessional. Plaintiff also violated LIRR policies by

advising an employee of a promotion without the approval of Human Resources.  Most significantly, plaintiff verbally abused a subordinate, and her interaction with subordinates generated complaints from their union alleging that she was creating a hostile work environment.  Exhibit KK.  Plaintiff's unprofessional behavior was a sufficient legitimate, non-discriminatory reason to reassign her to Manager of Hours of Service.  See *Jordan v. Kohl's Department Stores, Inc.*, 2011 US Dist LEXIS 53016 at *6, 18 (MD Tenn May 17, 2011)(employee properly terminated based upon attitude shown by hostile e-mail); *see also Shah v. Eclipsys Corp.*, 2010 US Dist LEXIS 67700 at *29 (E.D.N.Y. 2010) (insubordinate behavior is permissible and legitimate, non-discriminatory reason for firing an employee). The LIRR's decision to no longer tolerate plaintiff's poor demeanor provides a "legitimate, non-discriminatory business rationale for its actions." *Woroski v. Nashua Corp.*, 31 F.3d 105, 108 (2d Cir. 1994).

### 3.  Plaintiff Cannot Establish Pretext

Plaintiff must now come forward with evidence that the LIRR's proffered, non-discriminatory reasons are a mere pretext for actual discrimination.  (*See Weinstock v. Columbia University*, 224 F.3d 33, 42 (2d Cir. 2000); *Guerrero v. Lowe's Home Centers, Inc.*, 462 F. Supp. 2d 399 (W.D.N.Y. 2006).)  "[A] reason cannot be proved to be "a pretext *for discrimination*" unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993)(emphasis in original). That is, plaintiff must demonstrate both (1) that the LIRR's proffered reason was false and (2) that the real reason for the LIRR's action was unlawful discrimination.  (*See St. Mary's*, 509 U.S. at 524 ("that the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason of race is correct"); *James v. New York Racing Association*, 233 F.3d 149, 157 (2d Cir 2000)(evidence of prima facie case plus evidence from which fact finder could find employer's explanation to be false does not necessarily require submission to jury); *Yarde v. Good Samaritan Hospital*, 360 F. Supp. 2d 552, 561 (S.D.N.Y. 2005) ("plaintiff bears the burden of providing not just pretext, but racial discrimination").  Unless plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination based on his race, the claim must be dismissed. *See James*, 233 F.3d 149, 154.

Plaintiff "may disagree with or intensely dislike the stated reasons underlying the discipline, but that does not translate into discrimination." *Lawrence v. Thomson Learning, Inc.*, 2007 U.S. Dist. LEXIS 39988, *85 (N.D.N.Y. 2007). "It is not enough for the [plaintiff] to show that the employer made an unwise business decision, or an unnecessary personnel move. Nor is it enough to show that the employer acted arbitrarily or with ill will. These facts, even if demonstrated, do not necessarily show that [race] was a motivating factor." Plaintiff "cannot meet his burden of proving 'pretext' simply by refuting or questioning the defendants' articulated reason." *Ioele v. Alden Press, Inc.*, 145 A.D.2d 29, 36 (1st Dept. 1989)(*quoting Dea v Look*, 810 F.2d 12, 15 (1st Cir. 1987)(*See also, Byrnie v. Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001) ("[The court's] role is to prevent unlawful hiring practices, not to act as a superpersonnel Department that second guesses employers' business judgments.") *(quoting Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1330 (10th Cir. 1999) (internal quotation marks omitted); *Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002) (federal courts "are not in the business of adjudging whether employment decisions are prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision") (internal quotation marks omitted); *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1116 (2d Cir. 1988) ("Evidence that an employer made a poor business judgment in discharging an employee generally is insufficient to establish a genuine issue of fact as to the credibility of the employer's reasons."); *Jimoh v. Ernst & Young*, 908 F. Supp. 220, 226 (S.D.N.Y. 1995) (holding that a "plaintiff must do more than simply disagree with [his employer's] business decisions" in order to succeed on a discrimination claim)).

There were complaints made to the IG and by the TCU about the manner in which ASM assignments were being made. In addition, the MTA and the LIRR were seeking greater accountability and transparency in ASM assignments. Accordingly, a determination was made to transfer responsibility for those assignments to the Crew Management Office. Plaintiff had the ability to choose her assistant, but the chosen assistant would lose seniority rights pursuant to the CBA. Accordingly, the selection of the GSM assistant was based on seniority. Papanikolatos overruled a determination by plaintiff to deny a vacation day for an employee because the employee had a personal problem. Plaintiff was reassigned to

21

Manager of Hours of Service because of her unprofessional conduct. Plaintiff has failed to show that these reasons for the LIRR's actions were false, or that the real reasons were unlawful discrimination.

## POINT IV

## PLAINTIFF FAILS TO ESTABLISH A HOSTILE WORK ENVIRONMENT CLAIM

In order to prevail on a hostile work environment claim, plaintiff must prove three elements. First, she must show that the harassing conduct "was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Duch v. Jakubek*, 588 F.3d 757, 762 (2d Cir. 2009)(citation omitted). Second, plaintiff must show "that there is a specific basis for imputing the conduct creating the hostile work environment to the employer." *Id.* (internal quotation mark and citation omitted). Finally, plaintiff must demonstrate that the alleged harassment was based on sex. *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007) ("The *sine qua non* of a gender-based discriminatory action claim under Title VII is that the discrimination must be *because of* sex.") "[A] fact-finder may consider only abusive conduct proven to be based on sex" in the determination of whether the working environment is objectively hostile. *Pucino v. Verizon Wireless Comm'cns, Inc.*, 618 F.3d 112, 117 (2d Cir. 2010) (internal quotation marks omitted). "Hostile work environment . . . claims under the NYSHRL are generally governed by the same standards as federal claims under Title VII." *Schiano v. Quality Payroll Systems, Inc.*, 445 F.3d 597, 609 (2d Cir. 2006). A plaintiff suing for a hostile work environment under the NYCHRL bears a lower burden than she does under federal law. *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 872 N.Y.S.2d 27, 40 (1st Dep't 2009) (quoting *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998)). However, even under that lower burden defendant is not liable "if [it proves] that the conduct complained of consists of nothing more than what a reasonable victim of discrimination would consider 'petty slights and trivial inconveniences.'" *Id.* at 41. Plaintiff is unable to establish any of the requisite elements of a hostile work environment claim.

The "severe or pervasive" standard requires the plaintiff to show that "the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002). But Title VII does not create "a general civility code for the American workplace," *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998), and "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment," *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation marks and citation omitted). The Supreme Court has also held that "a work environment's hostility should be assessed based on the 'totality of the circumstances.'" *Patane*, 508 F.3d at 113 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). "Factors that a court might consider in assessing the totality of the circumstances include: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) 'whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Harris,* 510 U.S. at 23). "The incidents of allegedly offensive conduct must also be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 75, (2d Cir. 2001) (internal quotation marks omitted).

The factual basis of plaintiff's Title VII hostile work environment claim is limited by the allegations in her NYSDHR Complaint. *See Concey v. N.Y.S. Unified Court Sys.*, No. 08 Civ. 8858, 2011 U.S. Dist. LEXIS 113620, 2011 WL 4549386, at *10-12 (S.D.N.Y. Sept. 30, 2011) (finding that, where plaintiff's administrative complaint focused on his treatment by his immediate supervisor, he had not exhausted his claims with respect to his discriminatory non-selection by other actors); *Colquitt v. Xerox Corp.*, No. 05-CV-6405, 2010 U.S. Dist. LEXIS 107355, 2010 WL 3943734, at *5 (W.D.N.Y. Oct. 7, 2010) (finding that administrative complaint's allegation of hostile work environment were not reasonably related to a claim for failure to promote). While plaintiff now claims that a hostile work environment was created by Christopher Teresky and an allegedly offensive username on a computer game, plaintiff did not raise a claim of a hostile work environment claim with respect to her allegations concerning Teresky

23

or the allegedly offensive username in her NYSDHR Complaint. Ex. II. Accordingly, plaintiff's allegations with respect to Teresky and the username cannot support a Title VII hostile work environment claim.

Plaintiff's exhausted allegations are insufficient to demonstrate conduct that is severe or pervasive as required to create an objectively hostile or abusive work environment. There is no allegation that offensive comments were directed towards her. Rather, the crux and emphasis of plaintiff's complaint is her disparate treatment claim, and she does not identify any severe and pervasive conduct that created a hostile and abusive environment because of her gender. Though she points to a string of incidents - (1) she was excluded from meetings; (2) the responsibility for ASM assignments was transferred to the Crew Management Office; (3) Papanikolatos granted an usher compensatory time over plaintiff's objection; (4) her name was "forged" on official documents; (5) she was unable to choose her own assistant without condition; (6) she was unable to testify against an employee charged with forging her signature; (7) she was required to report to the trial office to give a statement concerning the Barrett incident; and (8) she was reassigned to Manager of Hours of Service - in support of her hostile work environment claim, such discrete acts do not demonstrate continuous and concerted conduct and thereby cannot constitute a hostile work environment. See *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002) ("Hostile work environment claims are different in kind from discrete [discriminatory] acts . . . [b]ecause their very nature involves repeated conduct . . . ."); *Singh v. N.Y. City Off-Track Betting Corp.,* 2005 U.S. Dist. LEXIS 11098, *37-39 (S.D.N.Y. 2005) (discrete acts of allegedly discriminatory treatment are insufficient to sustain a claim of hostile work environment).

Assuming *arguendo* that plaintiff has alleged facts sufficiently severe to constitute a hostile work environment through the diminishment of her authority, she is unable to allege that the hostile work environment was related to her gender. As set forth above, defendant had legitimate non-discriminatory reasons to transfer responsibility of ASM assignments to the Crew Management Office; to overrule plaintiff's determination and award compensatory time to an employee; to assign the GSM assistant pursuant to a seniority agreement with the TCU; and to reassign plaintiff to Manager of Hours of Service.

Plaintiff also alleges that she was unable to testify at a disciplinary hearing concerning an allegation that an employee forged official documents but fails to note that as a result of this incident, the employee was forced to retire to resolve the discipline. Exhibit LL, p. 18. While plaintiff also alleges that a hostile work environment was created because she was forced to accept Barrett as her assistant, and that she was advised that Barrett threatened her, plaintiff did not hear Barrett make any threat. Exhibit MM, p. 6. Moreover, the allegations were found to be unsubstantiated following an investigation involving numerous witness interviews. Petraglia Dec., ¶ 10 When the GSM assistant position became available, Barrett was entitled to bid for it and was awarded the job because of her seniority. Plaintiff has failed to set forth facts sufficient to show a hostile work environment.

## POINT V

### PLAINTIFF FAILS TO ESTABLISH A
### PRIMA FACIE CASE OF RETALIATION

Under Title VII, it is unlawful for an employer to discriminate against an employee because that employee "has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). The Supreme Court has recently clarified that "Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in [42 U.S.C.] § 2000e-2(m) [for status-based employment discrimination claims]. This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533, 186 L. Ed. 2d 503 (2013).

In adjudicating retaliation claims, courts follow the "familiar burden-shifting framework" of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)]." *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005). To prove a prima facie case of retaliation, a plaintiff must establish: (1) that she participated in a protected activity; (2) that participation in the protected activity was known to the employer; (3) that the employer thereafter subjected her to a

materially adverse employment action; and (4) that there was a causal connection between the protected activity and the adverse employment action. *See Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010).

If this initial burden is met, the burden shifts to "the employer to articulate a legitimate, non-retaliatory reason for the adverse employment action." *Id.* If and when the employer meets that burden of production, "'the *McDonnell Douglas* framework... disappear[s] and the sole remaining issue ... [is] discrimination *vel non.*'" *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 77 (2d Cir. 2001) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142-43, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)). The plaintiff must then prove the ultimate issues without any "benefit of ... intermediate burdens and presumptions." *Id.; see also Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008). The plaintiff may satisfy this burden by showing "pretext," *i.e.*, that the employer's proffered reason was false, *see, e.g., Reeves*, 530 U.S. at 143, 147. However, "if the record conclusively reveal[s] [a] nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact [as to pretext] and there [i]s abundant and uncontroverted independent evidence that no discrimination ha[s] occurred," then the employer is entitled to judgment as a matter of law. *Reeves*, 530 U.S. at 148; *see also Richardson v. Comm 'n on Human Rights & Opportunities*, 532 F.3d 114, 125-26 (2d Cir. 2008)(concluding that "overwhelming evidence" of legitimate reason for dismissal warranted judgment as a matter of law).

Traditionally, "[t]he standards for evaluating . . . retaliation claims are identical under Title VII and the NYSHRL." *Kelly v. Howard I. Shapiro & Associates Consulting Engineers, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013)(citing *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 n. 1 (2d Cir. 2000)). Under the NYCHRL, retaliation claims, similar to discrimination claims, are viewed under a broader interpretation than Title VII and NYSHRL and must be analyzed independently. *See Mihalik v. Credit Agricole Cheuvreux N. A*m., Inc., 715 F.3d 102, 112 (2d Cir. 2013)(explaining the standard for evaluating retaliation claims under the NYCHRL).

The first formal complaint of discrimination based on gender that made was after March 22, 2010. Exhibit B, p. 21. Moreover, even if plaintiff had informal discussions with her immediate

supervisor prior to that date, there is no evidence that her immediate supervisor made anyone – let alone any decision maker -aware of her complaints before March 22, 2010. *See Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000) (explaining that although corporate knowledge of a plaintiff's complaint is sufficient to satisfy the "knowledge" prong of a plaintiff's *prima facie* case, evidence that the specific decision-makers responsible for the adverse action were not aware of the plaintiff's protected activity is still relevant "as some evidence of a lack of a causal connection, countering plaintiff's circumstantial evidence of proximity or disparate treatment."). Moreover, all of the actions taken by the LIRR with respect to plaintiff prior to her transfer in April 2012 to Manager of Hours of Service were not sufficiently severe to constitute adverse employment actions.

**1.      Adverse Employment Action**

To rise to the level of material adversity, the employer's action must have been sufficiently severe in context to permit a trier of fact to conclude that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted). Actions that are "trivial harms"—i.e., "those petty slights or minor annoyances that often take place at work and that all employees experience"—are not materially adverse. *Id.* Title VII does not set forth "a general civility code for the American workplace." *Id; see also Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (stating that an adverse employment action is a "'materially adverse change' in the terms and conditions of employment"). The mere fact that an employee has been transferred or that his job responsibilities have changed is not sufficient in itself to show an adverse change in working condition." *Staff v. Pall Corp.*, 233 F. Supp. 2d 516 at 532-33 (S.D.N.Y. 2002).An "adverse employment action" includes "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation") *Lewis v. N.Y.C. Transit Auth.*, No. 04-CV-2331(SLT)(MDG), 2014 U.S. Dist. LEXIS 46471, 2014 WL 1343248, at *15 (E.D.N.Y. 2014) (citing

*Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)); *Alexander v. Westbury Union Free Sch. Dist.*, 829 F. Supp. 2d 89, 109 (E.D.N.Y. 2001) (exclusion for meetings not an adverse employment action); *Byrne v. Telesector Res. Group, Inc.*, 339 Fed. Appx. 13, 17-18 (2d Cir. 2009)(the Second Circuit rejected an employee's retaliation claim and found that withdrawal of a job posting, the transfer of plaintiff's position and changes of job responsibilities did not constitute adverse employment action).

The alleged actions taken by the LIRR - (1) plaintiff was excluded from meetings; (2) the responsibility for ASM assignments was transferred to the Crew Management Office; (3) Papanikolatos granted an usher compensatory time over plaintiff's objection; (4) her name was "forged" on official documents; (5) she was unable to choose her own assistant without condition; and (6) she was unable to testify against an employee charged with forging a signature - are trivial. Plaintiff offers no evidence that the alleged actions of the LIRR taken before April 2012 resulted in a demotion, loss of salary or material loss of benefits, a less distinguished title, significantly reduced material responsibilities, or otherwise constituted an adverse employment action.

## 2. Legitimate Non-retaliatory Reasons

### i. Control of the ASM Board

Plaintiff was unequivocally informed of the determination to transfer responsibility of ASM assignments to the Crew Management Office as early as March 22, 2010. Exhibit U; Exhibit B, p. 20-21. Plaintiff concedes that she did not formally complain of discrimination prior to March 22, 2010. Exhibit B, p. 20-21. Accordingly, the transfer of responsibility for assignments of the ASMs to the Crew Management Office cannot be the basis for a retaliation claim under federal, state or local law. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001) ("Employers need not suspend previously planned transfers upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality.").

### ii. Reassignment to Manager of Hours of Service

Plaintiff filed her NYSDHR complaint on or about January 27, 2012, and was reassigned from GSM to Manager of Hours of Service on April 24, 2012. However, plaintiff's conduct was under

investigation prior to the filing of the NYSDHR complaint. Indeed all of plaintiff's misdeeds that resulted in her transfer occurred prior to the filing of the NYSDHR complaint. Exhibit KK. "Employers need not suspend previously planned [actions] upon discovering that a protected activity occurred, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality." *Breeden*, 532 U.S. at 272. "Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Slattery v. Swiss Reins. Am. Corp.,* 248 F.3d 87, 95 (2d Cir. 2001). "[Defendants'] decision to address Plaintiff's poor performance and misconduct was set in motion before Plaintiff sent [her] . . . [discrimination] complaint[s]. The fact that [Defendants] later decided to [reassign] Plaintiff ... is not proof of retaliation, because it is clear that [Defendants] [were] proceeding along lines previously contemplated, though not yet definitively determined." *Dudley v. New York City Hous. Auth.,* 2014 U.S. Dist. LEXIS 140052, *78 (S.D.N.Y. 2014)(citations and internal quotations omitted). Regardless of the timing of the decision to reassign plaintiff, it is clear that the LIRR had legitimate non-pretextual reasons to reassign plaintiff. Plaintiff verbally abused subordinates, violated LIRR policies and interfered with the transfer of responsibility for the ASM assignments. Plaintiff's retaliation claim with respect to the reassignment to Manager of Hours of Service must be dismissed.

      iii.    **Reassignment to Cubicle**

As a result of her reassignment, plaintiff was transferred from a shared office in Penn Station to a temporary cubicle in the JCC prior to her movement to an office at HSF. A temporary move from an office to a cubicle does not constitute a materially adverse employment action. *Roncallo v. Sikorsky Aircraft,* 447 Fed. Appx. 243, 5-6 (2d Cir. 2011).

Assuming arguendo that temporarily assigning plaintiff to a cubicle constituted an adverse employment action, the LIRR had a legitimate reason to make the assignment. JCC office space was at a premium and offices were assigned to positions higher ranked than both Manager of Hours of Service and GSM. While plaintiff believes that an employee should have vacated an office to make room for her, the

29

supervisor did not want to force the employee out because the employee was recently denied a promotion. Exhibit B, p. 143. The defendant's desire not to impose upon another employee is a legitimate non-retaliatory reason for its determination not to assign plaintiff an office. Plaintiff's retaliation claim with respect to the assignment to the cubicle must be dismissed.

    **iv.**    **Denial of Promotion**

Plaintiff cannot rely on temporal proximity to establish causation. More than five months elapsed between the time complainant filed an amended complaint in the EDNY and when she applied for the Lead Transportation Manager position in July 2012, and more than seven months elapsed before she applied for the Manager of Customer Service and Terminal Operations position. *See Clark County School Dist. v. Breeden*, 532 U.S. 268, 273-74, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001) (recognizing that a prima facie case of retaliation based on mere temporal proximity requires that this proximity be very close); *see also, e.g., Murray v. Visiting Nurse Servs. of N.Y.*, 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007) (citing cases for the proposition that on summary judgment a gap of two or three months, without more, "does not allow for an inference of causation").

Even if plaintiff could rely on temporal proximity, the LIRR has established a legitimate, non-discriminatory reason for not promoting her. Plaintiff was not eligible for either of the positions because she had not been at her current position for a year prior to applying for the jobs. Application of a valid policy provides a legitimate, non-discriminatory basis for the denial of promotional opportunities. *Awolesi v. Shinseki, 96 Empl. Prac. Dec.* (CCH) P44,752, * 17 (W.D.N.Y 2013)(plaintiff failed to establish retaliation because defendant acted in accordance with its policy and that Plaintiff has not come forward with evidence to rebut this legitimate, non-discriminatory reason for the actions taken.) Accordingly, the LIRR had a legitimate non-discriminatory reason for not promoting plaintiff.

**3.**    **Plaintiff Cannot Establish Pretext**

The defendant has established legitimated non-retaliatory reasons for the actions it took. It is now incompetent upon plaintiff to establish pretext. *De Oliveira v. Cairo-Durham Cent. Sch. Dist.*, 2014 U.S. Dist. LEXIS 137593, *60 (N.D.N.Y. 2014)(citing *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708,

714 (2d Cir.1996).Temporal proximity between protected activity and an adverse employment action, alone, is insufficient to establish pretext for a retaliation claim. *Davies v. N.Y. City Dep't of Educ.*, 2014 U.S. App. LEXIS 7759, *6-7 (2d Cir. 2014).   As set forth above, plaintiff has failed to show that the reasons proffered for the LIRR's actions were false, or that the real reasons were unlawful retaliation

<u>CONCLUSION</u>

For the reasons set forth in this Memorandum of Law and the accompanying documents, defendant respecfully request that summary judgment be granted and the complaint be dismissed.

Dated:       Jamaica, New York
             December 19, 2014

                                    Respectfully submitted,

                                      RICHARD L. GANS, ESQ.
                                      Vice President/General Counsel & Secretary
                                      Attorney for Defendant

                                      By: _____
                                          Kevin P. McCaffrey
                                    The Long Island Rail Road Company
                                    Law Department - 1143
                                    Jamaica Station
                                    Jamaica, New York 11435
                                    (718) 558-6820